O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRON HENDERSON, ) | NO. EDCV 06-334-MAN |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

Plaintiff filed a Complaint on April 4, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of his claim for supplemental security income ("SSI"). On April 28, 2006, all parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on November 10, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, in the alternative, remanding the case for further

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

proceedings; Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on December 31, 2002. (Administrative Record ("A.R.") 54-55.) Plaintiff claims to have been disabled since January 1, 1999, due to foot and shoulder problems and carpal tunnel syndrome. (A.R. 13, 54.) He has past relevant work experience as a janitor. (A.R. 15.)

The Commissioner denied Plaintiff's claim initially and upon reconsideration. On January 9, 2004, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge David Ganly ("ALJ"); Plaintiff testified again at a supplemental hearing before the same ALJ on June 21, 2004. (A.R. 141-64, 165-75.) On July 13, 2004, the ALJ denied Plaintiff's SSI claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 3-5, 12-17.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his July 13, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. (A.R. 16.) The ALJ found that Plaintiff has a combination of impairments that are "severe," but do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.

4.  (*Id.*)  The ALJ found that Plaintiff was a "younger individual" at the time of the decision pursuant to 20 C.F.R. § 416.963, and he has a high school education pursuant to 20 C.F.R. § 416.964.  (*Id.*)  In addition, the ALJ found that Plaintiff's testimony regarding his impairments and limitations was not credible.  (*Id.*)

The ALJ determined that Plaintiff has the residual functional capacity for work at any exertional level with the following nonexertional limitations:  no climbing ladders; no working around dangerous or moving machinery; no working at heights or with vibrating equipment; and no reaching overhead with the right upper extremity. (A.R. 14, 16.)  The ALJ further found that Plaintiff has no transferable skills from any past relevant work pursuant to 20 C.F.R. § 416.968. (A.R. 16.)  Based on the testimony of a vocational expert and using Medical-Vocational Rule 204.00 as a framework for decision-making, the ALJ found that Plaintiff could perform a number of jobs in the national economy, such as a hand packager, bench assembler, and small products assembler.[2]  (*Id.*)  Accordingly, the ALJ concluded that Plaintiff is not

---

[2]  Rule 204.00 provides:

> Maximum sustained work capability limited to heavy work (or very heavy work) as a result of severe medically determinable impairment(s). The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work-- either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus

disabled within the meaning of the Social Security Act.  (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the

---

    an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

20 C.F.R. Pt. 220, App. 2.

Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges five issues: (1) whether the ALJ updated and considered properly the opinions of his treating physicians; (2) whether the ALJ considered properly the opinion of the consultative orthopedist; (3) whether the ALJ considered properly the opinion of the state agency physician; (4) whether the ALJ assessed properly plaintiff's credibility; and (5) whether the ALJ considered properly the side effects of plaintiff's medications. (Joint Stip. at 2-3.) Because Plaintiff's first three issues pertain to the propriety of the ALJ's consideration of the medical evidence in determining Plaintiff's residual functional capacity, the Court addresses them together in Section A, *infra*. Because Plaintiff's fourth and fifth issues pertain to the assessment of Plaintiff's credibility, they are addressed together in Section B, *infra*.

**A.  The ALJ's Finding Regarding Plaintiff's Residual Functional Capacity Constitutes Error.**

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and

observe the claimant. Smolen, 80 F.3d at 1279; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The opinions of examining physicians may constitute substantial evidence upon which an ALJ may rely in assessing a claimant's residual functional capacity when they are properly supported by the medical evidence. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan v. Comm'r. of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").

**1.    The Relevant Medical Evidence**

In a January 23, 2003 evaluation, Dr. Laurence Meltzer, an orthopedic surgeon who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with: minimal webbing of the second and third toes, bilaterally, not clinically significant; mild acromioclavicular ("AC") separation of the right shoulder, not clinically significant; and no evidence of carpal tunnel syndrome. (A.R. 90.) Dr. Meltzer based his findings on his examination of Plaintiff, including range of motion and strength testing, as well as the history provided by Plaintiff. (A.R. 84-90.) In discussing his findings, Dr. Meltzer noted that he believed Plaintiff was "markedly embellishing his symptoms," explaining that "[h]is gait is certainly unusual and minimal webbing of two toes certainly does not produce an abnormal gait," and Plaintiff's athlete's foot was "not clinically limiting in function." (A.R. 90.) In addition, despite Plaintiff's

6

complaint of occasional discomfort in his right AC joint, examination of his shoulder was entirely normal, "except for the mild prominence [of the AC joint]." (*Id.*)  Dr. Meltzer further noted that, despite Plaintiff's contention that he could not walk or stand on his toes and could barely stand on his heels, Plaintiff reported that he hurt his shoulder playing football. (*Id.*)  Thus, Dr. Meltzer concluded that Plaintiff had no functional restrictions. (A.R. 91.)

In a March 15, 2004 evaluation, Dr. Thomas Dorsey, an orthopedic surgeon who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with right shoulder chronic acromioclavicular separation with likely impingement syndrome; bilateral carpal tunnel syndrome; and fungal condition of the bilateral feet. (A.R. 133.)  Dr. Dorsey based his findings on his examination of Plaintiff, including range of motion and strength testing, and the following objective testing from Plaintiff's medical records:  a July 16, 2003 electrodiagnostic study indicating bilateral carpal tunnel syndrome, severe on both sides, and mild bilateral C5 radiculopathy; a June 22, 2001 electrodiagnostic study showing carpal tunnel syndrome and chronic right cervical radiculopathy affecting C8; and Dr. Meltzer's January 23, 2003 report with no attached records. (A.R. 130-33.)  In an attached Medical Source Statement, Dr. Dorsey found that Plaintiff:  had no limitations on lifting, carrying, standing, and/or walking; was precluded from climbing; could balance, kneel, crouch, crawl, and stoop frequently; was precluded from overhead reaching on the right side; was limited from handling, fingering, and feeling occasionally; and was precluded from working around vibration and working in environments involving hazards, such as machinery and heights. (A.R. 130-38.)

7

In a March 29, 2004 letter, Dr. Walter Green, a dermatologist who evaluated Plaintiff at the request of the Commissioner, observed that Plaintiff has two conjoined toes, and Plaintiff reported that his feet swell daily, which makes it difficult to wear shoes, although he can wear open sandals with comfort. (A.R. 139.) Dr. Green further noted that at the time of the exam -- 11:00 a.m. -- he could identify "only minimal if any edema or swelling of [Plaintiff's] toes and feet." (*Id.*) Dr. Green observed that, in other cases involving conjoined toes abnormality, the patients "did not complain of pain," but he noted that "each case is different in some respects." (A.R. 139-40.)

In an April 9, 2003 Physical Residual Functional Capacity Assessment, Dr. Leonard Naiman, a state agency physician, found that Plaintiff: could perform work at the "medium" level;[3] could stand, walk, and/or sit for about six hours in an eight-hour workday; was limited from balancing, stooping, kneeling, and crouching frequently; was limited from crawling occasionally; could never climb; was limited from handling and fingering; limited from reaching; and was precluded from working in environments involving hazards, such as machinery and heights. (A.R. 107-13.) In an attachment to his assessment, Dr. Naiman further specified that Plaintiff had limitations of "no extreme or constant overhead reaching or stretching" and "[no] constant power gripping or grasping but otherwise intact gross hand function," but he noted that Plaintiff retained the ability to "use [his] hands 2/3 or more of the time as defined for constantly in DOT/SCO" and "to write,

---

[3] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

turn pages, use phone, finger larger objects, etc." (A.R. 115.) With respect to Plaintiff's foot fungus, he noted that it was "expected to respond to prescribed treatment." (*Id.*)

**2.  Plaintiff's Residual Functional Capacity**

After considering the medical evidence of record, the ALJ found that Plaintiff's "residual functional capacity is unrestricted regarding lifting/carrying, standing, walking, and sitting" and "[n]onexertional limitations include no:  climbing ladders, working around dangerous, moving machinery; working at heights; or with vibration equipment" and "[no reaching] overhead with the right upper extremity." (A.R. 14.)

Plaintiff contends that the ALJ erred by failing:  to consider properly and explain the weight he assigned to the treating doctors' opinions, which showed a longitudinal history of Plaintiff's impairments; to contact Plaintiff's treating doctors for clarification or to update their records. (Joint Stip. at 3-4, 9-10.) In addition, Plaintiff contends that the ALJ failed:  to explain the weight he assigned to Dr. Dorsey's opinion; to include Dr. Dorsey's consultative examination findings[4]; and to provide these limitations to the vocational expert, who found that Plaintiff could perform work as a "hand packager"

---

[4] Dr. Dorsey examined Plaintiff and noted that the range of motion of his cervical spine, turning left and turning right, was 20/80. Dr. Dorsey documented that Plaintiff's left hand showed positive Tinel and Phalen test results (two clinical tests for diagnosing carpal tunnel syndrom).  Dr. Dorsey diagnosed right shoulder acromiclavicular separation with likely impingement syndrome and bilateral carpal tunnel syndrom.  He opined that Plaintiff was precluded from reaching on the right side and was limited to handling, fingering and feeling occasionally.  (A.R. 12-17, 130-38.)

9

and/or "assembler," although both jobs required more than "occasional" handling, fingering, and feeling. (Joint Stip. at 10-11.) Plaintiff further contends that the ALJ improperly failed to discuss Dr. Naiman's findings and opinions and to include them in his hypothetical to the vocational expert. (Joint Stip. at 12-13.)

Here, the ALJ erred in rejecting the hand limitations found by both Dr. Dorsey and Dr. Naiman, namely, limitations on handling, fingering, feeling, gripping, and grasping, without setting forth his reasons for doing so.[5] Critically, although Dr. Meltzer found no hand limitations, he examined Plaintiff prior to Plaintiff's July 2003 electrodiagnostic testing, which revealed bilateral carpal tunnel syndrom, markedly severe on the left, moderately severe on the right, and mild bilateral C5 radiculopathy. Although both Dr. Dorsey and Dr. Naiman opined that Plaintiff had manipulative limitations, the ALJ failed to include any hand limitations in his evaluation of Plaintiff's residual functional capacity or the hypothetical posed to the vocational expert. At the very least, the ALJ should have discussed whether he accepted or rejected the opinions of Dr. Dorsey and Dr. Naiman regarding Plaintiff's hand limitations, and assuming he rejected them, the ALJ should have set forth legally sufficient reasons for his rejection of those opinions. Thus, the ALJ's rejection of the hand limitations found by Dr. Dorsey and Dr. Naiman is not supported by substantial evidence and constitutes

---

[5] Dr. Dorsey found that Plaintiff was limited to occasional handling, fingering, and feeling. (A.R. 137.) Dr. Naiman also opined that Plaintiff had the following manipulative limitations in handling and fingering: "No constant power gripping or grasping but otherwise intact gross hand function. Should be able to use hands 2/3 or more of the time as defined for constantly in DOT/SCO. Could have difficulty with constant fingering but should be able to do fingering 1/3 to 2/3 of time as defined for frequent in DOT/SCO." (A.R. 110, 115.).

reversible error.

Furthermore, as all of the jobs identified by the vocational expert require significant use of the hands, it is unclear whether Plaintiff could perform such work if additional hand limitations were added to his residual functional capacity.[6] Accordingly, on remand, the ALJ must reassess Plaintiff's residual functional capacity and pose a complete hypothetical to the vocational expert, which includes all the hand limitations established by Dr. Dorsey and Dr. Naiman.

However, for the most part, the ALJ properly excluded Plaintiff's claimed foot and more restrictive shoulder and reaching limitations from the hypothetical posed to the vocational expert. As Dr. Green's report indicates, Plaintiff's foot discomfort was alleviated by wearing open toed shoes, and Plaintiff reported he experienced foot pain regardless of whether he was off his feet or standing or walking. (A.R. 139.) Dr. Naiman indicated that Plaintiff's fungal problem would likely be

---

[6] In posing the hypothetical question to the vocational expert, the ALJ asked, as follows:

> And as for [the] first of these, I'm going to take these from a combination of Dr. Dorsey in 7F and Dr. Meltzer in 1F.
>
> I want you to assume that he could not use any ladders. Well, first, with respect to sitting, standing, and walking, [no] sitting, standing, walking or lifting. No limitations. With respect to others, he could not use ladders or scaffolds. No reaching above the shoulder or overhead, actually. No overhead reaching of the right side. On the right side. And he should not be exposed to moving machinery, heights, or vibrating equipment.

(A.R. 171.) The vocational expert responded that Plaintiff would not be able to perform his janitorial work, given this hypothetical question, but Plaintiff could perform work as a hand packager, badge [sic] assembler, and small products assembler I. (A.R. 172-73.)

11

alleviated with treatment. (A.R. 115.) And as Dr. Meltzer indicated in his report, the credibility of Plaintiff's claimed foot limitations is diminished greatly by his admission that he hurt his shoulder while playing football. (A.R. 90.) Furthermore, Plaintiff's treating records, while generally noting foot pain and fungal problems, do not recommend treatment for such problems other than the use of anti-fungal medications. (*See, e.g.*, A.R., 95 -- January 10, 2003 progress record noting webbed toes and foot fungus and recommending Motrin and Mizoral (anti-fungal) cream with follow-up in one month; 96 -- September 7, 2001 progress record indicating webbing of the right second and third toes and tinea pedis (foot fungus) and recommending Difulcan (yeast infection medication) and Lotrimin cream (athlete's foot medication) with follow-up in two weeks; 120 -- July 17, 2003 progress record diagnosing foot pain and tinea pedis and recommending assessment by dermatology clinic.) At most, it appears that Plaintiff's foot problems may limit him to working jobs that would permit him to wear open toed shoes.

With respect to Plaintiff's claimed shoulder pain and reaching limitations, both Dr. Naiman and Dr. Dorsey reviewed objective testing in assessing these limitations. Dr. Naiman opined that Plaintiff was "limited from reaching," and Dr. Dorsey found that Plaintiff was precluded from "overhead reaching on the right side." (A.R. 107-13, 130-38.) Although the ALJ found slightly lesser limitations than those established by Dr. Naiman, the ALJ's determination, that Plaintiff is limited from reaching overhead on the right side, is nonetheless consistent with the medical evidence and Dr. Dorsey's opinion. *See* Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)(ALJ did not improperly reject treating doctor's opinion, because it was consistent with the

ALJ's determination that the claimant was capable of performing a "wide range of light work"). Thus, the ALJ's resolution of the conflicting opinions of Dr. Dorsey and Dr. Naiman regarding Plaintiff's overhead reaching limitations is supported by substantial evidence. <u>Batson v. Comm'r. of Soc. Sec.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004)(when there are conflicting medical opinions, the ALJ must resolve the conflict); <u>Thomas v. Barnhart</u>, 278 F.3d 247, 956 (9th Cir. 2002)(same); <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992)(same).

Insofar as Plaintiff maintains that the ALJ was obligated to "clarify" or "update" Plaintiff's treating records, his argument is unavailing. The requirement that the ALJ re-contact treating sources is triggered only where the information from the treating sources is inadequate to make a determination regarding disability. 20 C.F.R. § 416.912(e); *see also* <u>Thomas</u>, 278 F.3d at 956-57, 959. After the first administrative hearing on January 9, 2004, the ALJ noted that development of the record was necessary to assess the impact of Plaintiff's carpal tunnel syndrome on his residual functional capacity and to obtain clarification regarding his foot fungal problem, which was obtained through Dr. Dorsey's March 15, 2004 opinion and Dr. Green's March 29, 2004 opinion. (A.R. 161-64.) Plaintiff points to no ambiguity in his treating records, which supports the conclusion that the record was inadequate to make a decision regarding his disability.

Nevertheless, as the ALJ failed to include any hand limitations in the hypothetical posed to the vocational expert, it is unclear whether Plaintiff is able work as a hand packager, bench assembler, or small products assembler, because all three jobs require significant hand use.

Accordingly, on remand, the ALJ must re-assess Plaintiff's residual functional capacity and pose a complete hypothetical, which includes all of the hand limitations established by Dr. Dorsey and Dr. Naiman, to the vocational expert.

**B.     The ALJ's Finding Regarding Plaintiff's Credibility Is Affirmed.**

The Court gives great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir.1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically).  In rendering a credibility evaluation, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."   Smolen, 80 F.3d at 1284. When an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

With respect to the evaluation of subjective symptoms, including the side effects of medications, the Social Security Regulations

provide, *inter alia*, as follows:

> Since symptoms suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or examining physician or psychologist, or other persons provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms. . . . Factors relevant to your symptoms, such as pain, which we will consider include: . . . (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; . . . [and] (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.).

20 C.F.R. § 416.929(c)(3).

In rejecting the credibility of Plaintiff's claimed limitations and symptoms, the ALJ stated:

> [Plaintiff's] complaints of a disabling level of pain are not credible and are not reasonably supported by objective medical evidence, especially when consideration is given to the idiosyncratic nature of pain (SSR 96-7p). [Plaintiff] has not participated in any type of treatment consistent with a

> chronic pain syndrome such as physical therapy, treatment at a pain clinic, or therapeutic treatment. The absence or near absence of hallmark indications of pain such as reflex, sensory, and neurological deficits is an indication that the complaints of pain are exaggerated. Despite complaints of shoulder pain and bilateral carpal tunnel syndrome, [Plaintiff] has received only very conservative treatment on an infrequent basis. The consultative examiner at Exhibit 1F noted that [Plaintiff] markedly embellished his symptoms. [Plaintiff's] motivation to work is highly questionable and he has a poor work record.

(A.R. 14-15.)

Plaintiff claims that the ALJ failed to assess properly the credibility of his claimed limitations and symptoms. (Joint Stip. at 16-17.) In addition, Plaintiff maintains that, in assessing the credibility of his claimed limitations and symptoms, the ALJ failed to address the side effects of Plaintiff's medication on his residual functional capacity. (Joint Stip. at 20-21.)

While Plaintiff contends that his treatment has been extensive and, therefore, indicative of disabling pain, the records evidencing Plaintiff's treatment for his foot pain and fungus and for his carpal tunnel syndrome and shoulder pain -- less than 30 pages in their entirety for a several-year period (*see, e.g.*, A.R. 92-105, 119-28) -- can hardly be termed "extensive." *See* Smolen, 80 F.3d at 1284 (in rendering a credibility determination, the ALJ may consider an

16

"unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). Furthermore, as detailed above, no physician made any recommendation that Plaintiff curtail his activities to alleviate his claimed symptoms.

In addition, as the ALJ noted, Dr. Metzger expressed his belief that "this patient is markedly embellishing his symptoms," *i.e.*, exaggerating his claimed symptoms. (A.R. 90.) Without question, if Plaintiff was experiencing disabling foot, hand, and shoulder pain as he claimed, he could and should not have been playing football, which he reported to be the cause of his shoulder injury. *See, e.g.*, Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)(ALJ may reject a claimant's testimony upon: "(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so"); *see also* Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)(ALJ may disbelieve a claimant's alleged limitations where the claimant's testimony regarding his daily activities and the nature, effect, or severity of his symptoms are inconsistent).

Furthermore, the ALJ's reference to Plaintiff's poor work history constitutes a valid reason for rejecting his credibility. Indeed, as Plaintiff testified at the hearing, he has little work history over the last decade (A.R. 146-48), and his application papers indicate that he has not worked since 2000, when he worked as a janitor, a job which he left because he was "laid off." (A.R. 62.) *See* Thomas, 278 F.3d at 959 (affirming the ALJ's credibility rejection based on the claimant's "extremely poor work history" and lack of "propensity to work in [his] lifetime").

Finally, although Plaintiff now contends that the side effects of his medications were not properly considered by the ALJ in the assessment of Plaintiff's residual functional capacity, Plaintiff made no indication in his application papers or at the hearing that he was experiencing adverse side effects of his medication. His attempt to do so now is unavailing and disingenuous. *See* Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)(holding that claimants who are represented by counsel must raise issues at their administrative hearings in order to preserve them for appeal to the federal courts).

Accordingly, the ALJ's rejection of the credibility of Plaintiff's claimed limitations and symptoms is affirmed.

**C.     Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, due to the ALJ's failure to include any hand limitations in the hypothetical posed to the vocational expert, it is unclear whether Plaintiff can perform the jobs identified by the vocational expert. Accordingly, remand is the appropriate remedy to allow the ALJ the opportunity to reevaluate this issue. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and counsel for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 6, 2008

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE